UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PREMIER POLYMERS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-1812 |
| | § | |
| GREGORY WENDT, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is plaintiff Premier Polymers, LLC's ("Premier") motion for an injunction to require defendant Gregory Wendt to comply with his Confidentiality and Non-Solicitation Agreement ("Agreement") with Premier Polymers. Dkt. 1-2 at 12. Based on the Agreement, the evidence presented at injunction hearing, and the applicable law, the court is of the opinion that a permanent injunction should be GRANTED consistent with the parameters outlined in the following opinion.

**I. BACKGROUND**

Wendt worked for Premier starting in November 2010. Premier acquires, sells, distributes, and markets commodity polymers to end use markets in the United States and Canada. Wendt's title was "Sales Representative — Account Manager," and his duties included managing ongoing and prospective customer accounts and soliciting new customers. As part of this job, Wendt had access to various types of customer information, including but not limited to, customer sales histories, product pricing and payment terms, and sales strategies. The polymers business is highly competitive, and Premier required Wendt to sign the Agreement requiring that he not share

Premier's confidential information, and not solicit Premier's customers, suppliers or employees for specified periods of time if Wendt left the company. *Id.* at 5–7. Wendt signed the Agreement as a condition of his employment.

On or about March 3, 2015, Wendt resigned from Premier and began working for one of its competitors, Genesis Polymers ("Genesis"). In the months that followed, Premier discovered evidence that led them to believe that Wendt was breaching the Agreement. For example, Premier discovered that during Wendt's tenure at Premier, Wendt sold products on behalf of another company (Global Polymers). Wendt had also been forwarding Premier pricing, strategy, and other information to his personal email account. Also, at or around the time that Wendt resigned from Premier, he was recruiting his Premier customers to buy product from his new employer Genesis.

Based on this information, Premier filed suit against Wendt in Harris County, Texas for breach of contract, misappropriation of trade secrets, and breach of the duty of loyalty, and sought monetary damages and preliminary and permanent injunctive relief. That day the state court issued the first Temporary Restraining Order ("TRO 1"), enjoining Wendt from using or disclosing Premier's confidential information, and from activities such as soliciting or causing the loss of Premier's suppliers, customers or employees. Dkt. 1-3. TRO 1 was served on Wendt on June 6, 2015. Before the temporary injunction hearing was set, Wendt removed the case to this court. Dkt. 1. Premier filed a supplemental application for a TRO ("TRO 2") and, after a hearing before the Magistrate Judge, this court granted TRO2. Dkt. 7. TRO2 essentially placed the same, but more specific, restrictions on Wendt. Dkt. 7. At that time, the court noticed the parties that it would hear plaintiff's application for a preliminary and permanent injunction on July 8, 2015. *Id.* at 4. The

court took evidence at the hearing, which continued on July 9, and based on the evidence, renders the following opinion.

## I. ENFORCEABILITY

Premier alleges several violations of the Agreement, which it claims entitle it to an injunction restraining Wendt from violating the Agreement. At the hearing Wendt admitted several violations including providing confidential customer names and volumes to Genesis as he was discussing employment with them while still employed by Premier, and actually soliciting Premier customers covered under the Agreement to Genesis. The provisions relating to Wendt soliciting customers and sharing or using confidential information are forward looking, and can be enforced through an injunction. Wendt challenges the enforceability of the non-solicitation and confidentiality provisions of the Agreement and the construction of the terms used within non-solicitation provision.

### A. *Consideration Defense*

The court begins with Wendt's argument that the Agreement is not enforceable because no consideration was timely given by Premier. Wendt argued that the confidential information that was supposed to be given in exchange for Wendt's compliance with the Agreement was lacking until he was walking out the door. According to Wendt, Premier feared its sales force would leave after Premier reworked its sales compensation packages, so it began giving massive amounts of unnecessary confidential information to its sales force in order to provide the required consideration to make Premier's non-solicitation agreements enforceable. However, the court heard evidence that Wendt received some confidential information, such as reports on his sales and margin calculations, shortly after joining Premier and began receiving additional confidential information about a year before he left, which coincides with a new sales lead, strategy, and commission structure. The court

is not persuaded that Premier data-dumped confidential information on its sales force to somehow instantly make its agreements with its sales force enforceable. Regardless, the Supreme Court of Texas has explained that there is no requirement "that the employee receive consideration for a non-compete agreement prior to the time the employer's interest in protecting its goodwill arises." *Marsh*, 354 S.W.3d at 778. Such reasoning is persuasive as to the entire agreement, and the court finds this defense without merit.

### B. *Non-solicitation provision*

The relevant portion of the non-solicitation of customers provision states:

[F]or an eighteen (18) month period, the [Wendt] will not, directly or indirectly, either for himself or through any kind of ownership as a director, agent, employee, or consultant, for any other person, firm, or corporation, call on, solicit, takeaway, or cause the loss of [customers] of [Premier] with whom [Wendt] because acquainted during his employment, nor [customers] that [Wendt] was acquainted with prior to his employment, but with whom [Premier] has transacted business in the previous twelve (12) months.

Plaintiff's Exhibit 13 ("P. Ex. 13").

In Texas a specific act governs non-solicitation agreements: "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable Agreement at the time the Agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50 (West). If the covenant not to compete is not in compliance with the Act, "the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary . . . . Tex. Bus. & Com. Code Ann. § 15.50 (West).

4

At the outset, the court notes that although the Agreement has a non-solicitation provision relating to suppliers, Premier did not put forth any evidence that Wendt's prior or current job requires interaction with suppliers, or that Wendt contacted Premier suppliers after he left Premier, and, the court will not consider enjoining such behavior. Therefore, the court focuses on the non-solicitation provision as it relates to customers.

*1. Part of an Enforceable Agreement*

The customer non-solicitation provision was included in Wendt's broader Agreement, which the court finds is enforceable.

*2. Geographic Scope*

The geographic scope of the Agreement was not challenged and the court heard no evidence upon which to question the reasonableness of the geographic scope.

*3. Scope of Activity*

As to the scope of activity to be restrained, the activity Wendt cannot do under the Agreement is calling on, soliciting, taking away or causing the loss of customers. The question is whether the restraint of these activities is "reasonable and [does] not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50 (West).

During the hearing there was some dispute about what "calling on" entailed, and whether it just involved a phone call or in-person visits. Wendt asserted that, if the provision was enforceable at all, the court should interpret the provision to include only business solicitation-focused as opposed to—for example—casual conversation at a trade convention or a personal friendship that Wendt had with at least one of the Premier customers.

The court agrees that the intent of the Agreement was to ultimately prevent the solicitation and loss of Premier customers, and the scope of the activities to be restrained is reasonable only if interpreted in that way. Therefore, the court interprets the activity to be enjoined as the soliciting of business (including the solicitation-focused activities of calling on, taking away, or causing the loss of), which would not include a casual conversation at a trade show or personal friendship that did not also involve solicitation of business.

Additionally, there was dispute in the hearing about whether the term "customer" in the Agreement referred to only those businesses that Premier had actually sold product to, or whether it also included the targeted group of potential customers with whom sales representatives were instructed to meet, negotiate, and cultivate a relationship, even though no transactions had occurred. The court interprets the Agreement to only apply to those customers that have transacted business with Premier, not potential customers. The Agreement language was instructive in this interpretation. To begin with, customers is not defined, and does not otherwise appear to include potential customers. Further, paragraph three explains that the second group Wendt is restrained from soliciting are those customers that "he was acquainted with prior to his employment, but with whom Premier Polymers has transacted business in the previous twelve (12) months." P. Ex. 13. This language highlights what Premier considered to be the important characteristic of the term customer: someone with whom Premier had transacted business. Premier has not provided any persuasive authority or argument that the term customer should be interpreted more broadly. Therefore, the court finds that a customer is an entity that has actually purchased something from Premier. Under the Agreement as written, customer does not relate to potential customers, even if samples were sent to the customer but payment was not received.

*4. Timing*

As to the scope of timing, Wendt would be enjoined from the above activities for an 18 month period. The question is whether this is "reasonable and [does] not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50 (West). Premier urges that 18 months is reasonable for a sales representative given that it can take up to 24 months to cultivate such a customer relationship. Wendt put on contrary evidence that customer relationships can be built up in a matter of a few months. Further, Wendt put on evidence that Premier's competitors use an 18 month non-solicitation Agreement only for sales managers—not lower-level account representatives—because the representatives were given and used less confidential information than the sales managers, and therefore, did not need such lengthy non-solicitation periods. Premier provided Wendt with confidential information relating to other account manager's customers and sales at least since 2014. Although Wendt testified that the additional confidential information he received since 2014 did not help him in his job as an account manager, there is no dispute that he was given substantial additional confidential information from 2014 until he resigned from Premier on March 3, 2015.

The court recognizes that the relative size of companies and their parent companies, among many other factors, dictate the amount of risk a company can bear, including the length of a non-solicitation agreement. The court finds that for the amount and types of information Wendt was given, 18 months from the time Wendt left Premier is a reasonable time period to restrain him from soliciting customers covered under the Agreement.

Premier argues that the 18 month time frame should begin from the date of the injunction, because Premier has been deprived of the benefit of the first four months of the non-solicitation

period. Dkt. 33 at 7. The court disagrees. First, the court has already decided that 18 months, not 22 months, is a reasonable time frame for Premier to protect itself. And though Wendt undisputedly injured Premier when he breached various provisions in his Agreement during the first four months of the 18 month non–solicitation period, Premier is not without remedy. Premier can seek damages for its injuries in the breach of contract action it brings before this court.

*5. Unclean hands defense*

Wendt raised the defense of unclean hands. He appeared to argue that Premier had benefitted in the past when it hired sales representatives who breached their non-solicitation agreements with prior employers. Therefore, Wendt argues, Premier has unclean hands and cannot enforce the non-solicitation provision of the Agreement against Wendt. However, Wendt did not allege that Premier had unclean hands with regard to enforcing his Agreement, the relevant issue for an unclean hands defense. "The doctrine of unclean hands permits a court to deny equitable relief to a party guilty of fraud, deceit, unconscionability, or bad faith *relative to an issue present in the pending lawsuit*." *Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409, 1428 (S.D. Tex. 1995) (emphasis added). The evidence presented regarding former Premier employees and their non-solicitation agreements does not relate to Wendt's conduct or Agreement in this case. The court will not consider this defense.

In conclusion, the court finds that the non-solicitation provision in the Agreement is enforceable as to customers that meet the various time frames in the provision.

C.  ***Confidential information provisions***

The disclosure of confidential information and trade secrets is not covered by the Texas statute that governs the enforceability of non-compete agreements. Therefore, the court will simply

look at whether this is an enforceable contract provision. In other words, was there an offer, acceptance, and consideration. *See Marsh USA Inc. v. Cook*, 354 S.W. 3d 764, 773 (2011). The parties both entered this Agreement freely, and with the intent to be bound by it. The purpose was for Premier to be able to protect its interests, while providing Wendt a job. Premier's consideration was, at least, giving Wendt confidential information, including customer leads. For that information, Wendt promised to keep the information confidential. This Agreement was clear about what it covered, including the identity of Premier's customers, the preferences of its customers, and the products in which it deals. This information clearly had some value to Wendt as he e-mailed much of it to a personal account, and began using the names of Premier customers—the identifies of which were confidential information—for his benefit as a Genesis sales representative, even while he was still being paid by Premier.

For the foregoing reasons, the provision relating to confidential information in the Agreement is enforceable.

## II. INJUNCTION

Because the court has found that the challenged portions of the Agreement are enforceable, the court turns to whether Premier has met the elements required to enjoin Wendt from violating the Agreement. The Agreement states that

> [i]t is expressly agreed and understood that in the event of a breach or threatened breach by the employee of any of these provisions, [Premier] shall, in addition to other remedies, be entitled to extraordinary relief, including a restraining order or an injunction restraining the employee from violating this Agreement. A breach or threatened breach shall include without limitation soliciting business from [Premier's] suppliers and customers and disclosing, in whole or in part, any confidential information or commercial concepts, or from rendering any services to any person, firm, or corporation to whom such information may be disclosed or is threatened to be disclosed.

P. Ex. 13. The court noticed the hearing as covering a preliminary and permanent injunction, and is satisfied that sufficient evidence was presented to support a permanent injunction.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balances of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 272–73 (5th Cir. 2014) (quoting *eBay Inc. v. Merc Exchange, L.L.C.*, 547 U.S. 388, 394, 126 S. Ct. 1837 (2006)). "The decision to grant or deny a permanent injunction is grounded in principles of equity and is in the discretion of the district court." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013).

In terms of showing irreparable injury, at the very least, Wendt admitted that he solicited Premier customers to Genesis and made sales to them at Genesis right after he resigned from Premier, which also involved the sharing of Premier's confidential information. This is clear harm that has already occurred. Monetary damages are inadequate in this case to replace an ongoing customer relationship and the intimate details that a sales representative learns about the customer. Premier put on evidence that it needed the time outlined in the non-solicitation to build a relationship between an existing customer and a new sales representative after a former sales representative leaves. This time frame provides Premier a safe harbor in which to re-build the relationship with a client without the former sales representative soliciting the customer away with all the confidential information he learned from Premier. Accordingly, an injunction requiring Wendt to follow the Agreement, as opposed to merely damages, is warranted.

The balancing of hardships favors Premier being granted the injunction. As to the relative hardship of requiring Wendt to follow the Agreement, Wendt put on evidence that his new employer was large, established, and sophisticated and did not need Premier's confidential information, including information related to its customers. In addition, Wendt's employment agreement with Genesis even requires Wendt to not disclose to the company any confidential information that Wendt knows from a third party. P. Ex. 14 (section 4(c)). On the other hand, Premier put on evidence that it is relatively new to the business and small, and that the customer relationships Wendt took were very important to its livelihood. Even under the terms of an injunction, there are quite a few customers that Wendt can still contact.

Finally, the public will not be disserved through enforcement of this Agreement. Valid non-compete agreements encourage employers to entrust confidential information and client relationships to key employees. *Marsh*, 354 S.W.3d 764 at 769. Such agreements also protect employers who invest "significant resources in developing good will that an employee could otherwise immediately take and use against them in business." *Id.*

For the foregoing reasons, the court finds that principles of equity require injunctive relief for Premier. As to the non-solicitation provision in the Agreement, Wendt admitted that under the Agreement, the following customers would be subject to the non-solicitation provision: Alte-Rego; Baughman Tile Co.; Bramcal Productions; Eagle Film Extruders; Flexaust; Future Polytech; Loose Plastics; Millennium Flexible Packaging; Noble Polymers; Pinnacle Industrial and/or Pinnacle Plastic Products; Poly Flex Products; Premier Poly Products; Soroc; Shuert Technologies and/or Shuert Industries, Inc.; The Plastics Group; Uniram; Vantage Plastics & Airpark Plastics; and Versa Pack. D. Ex. 32.

Therefore, the court GRANTS Premier's motion for a Permanent Injunction as follows:

1. Wendt is prohibited from using Premier Polymers' Confidential Information (as defined below) for his own personal benefit or the benefit of Genesis Polymers, or any other entity or individual.

2. Wendt is prohibited from disclosing Premier Polymers' Confidential Information (as defined below) to Genesis Polymers, or any other entity or individual.

3. If he has not already done so, Wendt must return all of Premier Polymers' Confidential Information (as defined below) in his possession (or that of his attorneys), including all documents and/or data in electronic format, within five business days after the date of this order.

4. Confidential Information is defined herein to include information and knowledge pertaining to: customer and supplier accounts, including the names, contact information, identification of those with decision making authority, sales history, pricing, profit margins, and monthly sales reports of the accounts; long term business models and strategies, including the company's forecast for development, products, and markets; financial information, including profit margins, pricing policies, internal costs and expenses; supplier information; the particular needs and preferences of Premier Polymers' customers; forms and methods and trade practices; Premier Polymers' arrangements, agreements, and terms with its suppliers and customers; the products in which Premier Polymers deals; technical data relating to Premier Polymers' services and production of services; the source of Premier Polymers' products method for transporting such products; the employment terms and benefits available to Premier Polymers' employees, including compensation; and the commercial strategies which Premier Polymers employs or may employ in the future. Premier Polymers' Confidential Information includes that information maintained and/or compiled

in the form of emails, spreadsheets, monthly sales reports, weekly sales reports, budget reports, quarterly meeting presentations, contracts with suppliers and customers, PowerPoint presentations, or in the ACT database.  It also includes Confidential Information that was also provided to Wendt verbally and in other forms of documentation during his lengthy employment at Premier.

     5. For a period of eighteen months from March 3, 2015, Wendt is prohibited from directly or indirectly either for himself or for an other individual or entity as an agent, employee, or consultant,  calling on, soliciting, taking away, or causing the loss of the following entities, together with their affiliates and which entity names shall include all entity types regardless of the company modifier included with any such entity name (e.g., Inc., Corp., LLC): Alte-Rego; Baughman Tile Co.; Bramcal Productions; Eagle Film Extruders; Flexaust; Future Polytech; Loose Plastics; Millennium Flexible Packaging; Noble Polymers; Pinnacle Industrial and/or Pinnacle Plastic Products; Poly Flex Products; Premier Poly Products; Soroc; Shuert Technologies and/or Shuert Industries, Inc.; The Plastics Group; Uniram; Vantage Plastics & Airpark Plastics; and Versa Pack.

     It is so **ORDERED**.

     Signed at Houston, Texas on July 17, 2015.

                                                                                                   _____

                                                                                             Gray H. Miller
                                                                         United States District Judge